UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


LACY E. LEWIS,

     Petitioner,

v.                              Case No. 1:18cv93-MW-HTC

MARK S. INCH,[1]

     Respondent.

_____/

## ORDER and REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Lacy E. Lewis's ("Lewis")
petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF Doc. 1. Respondent
filed a response (ECF Doc. 19) and Lewis filed a reply (ECF Doc. 21). The matter
was referred to the undersigned Magistrate Judge for report and recommendation
pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). As explained further
below, Lewis has asserted one ground for relief – that his trial counsel was
ineffective for advising him that consent to enter by the owner, rather than the
consent of a tenant, was sufficient to defeat a burglary charge. As discussed further
below, it is unclear, however, whether Lewis's claim is that counsel's mis-advice

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is
automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to
update the case file information to reflect Mark S. Inch as the Respondent.

deprived him of a fair trial or deprived him of effective counsel when considering whether to take the State's proffered 5-year plea, or both. Thus, both claims are addressed herein, and for the reasons set forth below, the undersigned recommends the Petition be **DENIED** without an evidentiary hearing.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 21, 2011, Lewis was convicted by a jury of aggravated stalking and burglary of a dwelling – a single-family home at 1118 SE 19th Street in Gainesville, Florida ("the 19th Street house"). ECF Doc. 19-1 at 38, 61. The 19th Street house was owned by Lewis's older sister and her husband, Harry and Wanda Cobb. *Id.* at 32. Although the Cobbs owned the house, they did not live there. Rather, Debra Baker, Lewis's other sister, lived in the house. *Id.* at 127.

The events leading to Lewis's arrest are as follows. On the evening of April 24, 2010, Baker and her boyfriend arranged to go to dinner with Lewis and Lewis's then girlfriend. *Id.* at 36. When the two couples arrived at the restaurant, a verbal altercation between Baker and Lewis occurred in the parking lot. *Id.* 19-2 at 38, 157-58. Lewis abruptly left in his girlfriend's car. *Id.*

Later that evening, after Baker got a ride from her daughter from the restaurant and got the girlfriend back to her car, Baker discovered Lewis had left her several disturbing voice messages on her cell phone. Before returning to the 19th Street house, Baker called the Alachua County Sheriff and was told that a deputy would meet her at the house. *Id.* at 44. When she arrived at the 19th Street house, she

noticed the door was ajar, and she could not lock it. *Id.* at 45. She noticed the screen to one of the windows was pulled back and a footprint was still on the door. *Id.* After noticing that one of Lewis's voice mail messages came from a number inside the home, she realized it was Lewis who had broken into the house at some point in the night. *Id.*

Lewis was charged by information on July 1, 2010, with aggravated stalking, trespass in a structure or conveyance, and criminal mischief (for damaging the door and window screen). ECF Doc. 19-1 at 25-26. On July 20, 2010, the State filed notice that Lewis was going to be charged as a prison releasee reoffender ("PRR"). *Id.* at 36. Represented by public defender AuBroncee Martin, Lewis entered a plea of not guilty on July 29, 2010. *Id.* at 37. On December 22, 2010, an amended information was filed, increasing the charge on count II to burglary of a dwelling rather than trespass of a structure or conveyance. *Id.* at 38. Lewis was arraigned on the amended information and informed in open court of the burglary charge and possible sentence on January 12, 2011. ECF Doc. 19-9 at 223.

Lewis's jury trial was held on April 21, 2011. ECF Doc. 19-2 at 1. After deliberations, the jury found Lewis guilty of both the aggravated stalking and burglary charges. Lewis was convicted and sentenced to five years for aggravated stalking, to run concurrently with the mandatory-minimum 15-year sentence on the burglary of a dwelling charge. ECF Doc. 19-2 at 65-66. Lewis appealed on May

11, 2011, and the First DCA affirmed, *per curiam*,[2] on April 16, 2012, and the mandate was issued on May 2, 2012.  ECF Doc. 19-6.

Lewis filed a motion for postconviction relief under Fla. R. Crim. P. 3.850 on July 5, 2012, which contained six grounds for relief.  ECF Doc. 19-7 at 23-49.  In Ground Four he argued trial counsel's "advice that consent from landlord was a viable and coherent defense to burglary was erroneous based on the law of the case …[and] [f]ailure to advise Defendant on applicable law precluded defendant from accepting five year plea offer from State."  *Id.* at 39.  The state court summarily denied the motion on August 20, 2014.  *Id.* at 211.  Lewis appealed, *id.* at 362, and the First DCA affirmed on all the grounds except Ground Four.  ECF Doc. 19-8 at 2-3.  The First DCA remanded Ground Four to the state court for an evidentiary hearing.  *Id.* at 3.

On August 24, 2015, the state court held an evidentiary hearing at which Lewis and his two trial attorneys testified.  ECF Doc. 19-9 at 208.  On August 31, 2015, the state court denied relief on Ground Four by written order, finding that Lewis was unable to show he would have taken the government's plea offer even had his counsel correctly stated the law as to the owner of a property for purposes of a burglary.  *Id.* at 53.  Lewis was allowed to file a belated notice of appeal on November 17, 2016, *id.* at 206, and filed the Notice of Appeal on December 15,

---

[2] Judges Wolf, Padovano and Marstiller concurred.

2016. *Id.* at 207. The First DCA affirmed the denial of Ground Four, *per curiam*,[3] without opinion, on January 10, 2018. ECF Doc. 19-13 at 1. The mandate was issued on February 7, 2018. *Id.* at 3. Lewis delivered the instant petition to prison mail officials on May 15, 2018. ECF Doc. 1 at 13.

## II.    LEGAL STANDARDS

### A.    Federal review of state court decision

Under the standard of review for a § 2254 motion, this Court is precluded from granting habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000). *See id.*, at 412-13 (O'Connor, J., concurring). Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[3] Judges Wolf, Rowe and Winsor concurred.

decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010). Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the [] case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

Finally, in determining whether the state court's decision "was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the state court's determination of factual issues is presumed correct. *See Parker v. Head,* 244 F.3d 831, 835 (11th Cir. 2001). The burden is on the petitioner to rebut that presumption of correctness by clear and convincing evidence. *See id.* at 835-36; 28 U.S.C. § 2254(e)(1); *see also, Siplen v. Sec'y, Fla. Dept. of Corr.*, 649 F. App'x 809, 811 (11th Cir. 2016). Additionally, this Court must accept the state court's credibility determinations. *See Baldwin v. Johnson,* 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsels'] testimony over [petitioner's]."); *see also, Consalvo v. Sec'y for Dept. of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011)

("[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review").

### B.    Standards for an Ineffective Assistance of Counsel Claim

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.  *Id.* at 689.  The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.  *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Bare allegations that the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

A defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 138 (2012), and *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. Thus, the two-part test articulated in *Strickland* applies to claims that counsel was ineffective during plea negotiations. *See id.* at 163 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer).

In the context of a rejected plea offer, a petitioner must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at 163-64.

## III.    ANALYSIS

As stated above, Lewis raises one ground for relief in his petition, that his trial counsel was ineffective for misadvising him that consent from the owner/landlord was a viable defense to the burglary charge. In his 3.850 motion, Lewis framed the issue as resulting in his rejection of the State's 5-year plea offer. In the instant

petition, Lewis continues to argue that "[b]ased on the misadvice of Petitioner's Attorney, Petitioner believed he had an absolute right to enter the home and reject every plea offer," but adds "the core issue of Petitioner's claim is not the rejection of the plea offer, but the guaranteed Sixth Amendment right to effective assistance of counsel." *Id.* at 8. Lewis further states that "trial counsel erroneously pursued an illegal defense during the trial proceeding." *Id.* Therefore, as an initial matter, and out of an abundance of caution, the undersigned addresses both claims and finds the claim Lewis was denied a fair trial should be dismissed because it was not presented to the state court and is procedurally barred, and the claim he was denied effective assistance of counsel as to the plea offer should be dismissed on the merits.

## A. Lewis Failed To Exhaust His Claim That He Was Deprived of an Unfair Trial

Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies. 28 U.S.C. § 2254(b), (c). A failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (internal quotation marks and brackets omitted). The key question for exhaustion is whether Lewis "fairly presented" this issue to the state courts. As the Eleventh Circuit has explained:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts

> necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal citations and quotations omitted).

### 1. Lewis Did not Fairly Present this Issue to the State Court

Upon review, the undersigned finds that Lewis did not fairly present the argument he was deprived a fair trial to the state court in his rule 3.850 motion. As set forth above, the sole issue Lewis raised in Ground Four (a/k/a Ground D) of Lewis's 3.850 motion was that his counsel's misadvice resulted in him not taking the 5-year plea deal. In the bolded heading for Ground Four, Lewis states, "Failure To Advise Defendant On Applicable Law Precluded Defendant From Accepting Five Year Plea Offer From State." ECF Doc. 19-17 at 39. Additionally, Lewis begins the "argument on the merits" section by stating, "[t]o establish prejudice after Defendant has rejected an offer to plead guilty, Defendant must establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement, *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)." *Id.* at 40. Lewis further states, "[t]his claim demonstrates counsel's failure to understand the law in relation to the defendant rejecting a five year prison

sentence." *Id.* at 41.  He ends his merits argument with "[a]bsent counsel's error, the defendant would have accepted the state's five year plea deal. Absent counsel's error, there is a reasonable probability that the result of the proceeding would have been different." *Id.*  at 43.  Nowhere in Lewis's motion does he contend that counsel's misadvice deprived him of a fair trial.

When the Eleventh Circuit remanded the issue for an evidentiary hearing, the court stated as follows:

> In ground four of his motion, Appellant alleged that prior to trial he turned down a five-year plea offer on the advice of counsel, who allegedly told him that he could not be convicted of burglary because he had the consent of the owner to enter the house.  However, the owner for purposes of the burglary statute, from whom consent must be obtained, is the tenant who occupies the burglarized premises.  Appellant alleged he would have taken the five-year plea offer had he been advised that consent from the non-occupying homeowner was not a defense to the charge.  Because there is nothing in the record which refutes Appellant's allegations of misadvice or prejudice, we reverse and remand the denial of ground four for an evidentiary hearing.

ECF Doc. 19-9 at 35-36.  Thus, the focus of the evidentiary hearing was the advice given to Lewis regarding consent and the reason Lewis declined the State's offer. There was no testimony elicited regarding whether Lewis was deprived a fair trial. There was no argument made by the parties regarding whether Lewis was deprived of a fair trial.  In closing argument, the State framed the issue as "whether or not the defendant knew he could've been convicted of burglary even with his defense, and that if he were convicted of burglary he would get 15 years.  If he took the plea in lieu of going to trial, he would've gotten five years PRR." *Id.* at 275.  Likewise,

Lewis's counsel argued "had Mr. Lewis known that he could not get the permission, and did not have the permission, and could not get the permission of the landlord, but he had to get the permission of the tenant, which he obviously knew he did not have, then the case probably would have ended in a plea, Your Honor. The fact that he relied to his detriment, is the reason that he has been convicted of this charge." *Id.* at 273. Lewis did not argue at the evidentiary hearing he was deprived a fair trial; instead, as his counsel stated, Lewis's position was that he was convicted because he did not take the plea deal.

A claim that Lewis was denied effective assistance of counsel at the plea stage is based on facts that are different from a claim that Lewis was denied effective assistance of counsel at trial. *See Johnson v. Singletary*, 162 F.3d 630, 634-5 (11th Cir. 1998) (finding petitioner's habeas claim that counsel was ineffective for informing the court petitioner was not competent was procedurally barred as it was not the same as the substantive competency claim he raised with the state court); *Harris v. Sec'y, Dep't. of Corr.*, 2009 WL 1107674 at *6-7 (M.D. Fla. Apr. 22, 2009) (finding that petitioner's general complaint of uncalled witnesses in his state postconviction motions lacks specificity and is insufficient to support a finding that he properly presented his ineffective assistance claim for failure to call a particular witness to the state courts for review). In cases presenting ineffective assistance of counsel claims, the Eleventh Circuit has held that habeas petitioners may not present particular factual instances of ineffective assistance in their federal petitions that

were not first presented to the state court. *See e.g., Johnson,* 162 F.3d at 635 ("[w]e have previously held that 'habeas petitioners generally may not raise ineffective assistance of counsel claims except on grounds specifically presented to the state courts.'"); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("a habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously"). Even when a petitioner alleges different supporting facts for the same claim in his state versus federal petition, he has failed to fairly present the federal claim to the state court. *See Anderson v. Harless,* 494 U.S. 4, 6 (1982); *see also Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) ("[a] habeas petitioner is not entitled to an evidentiary hearing to develop facts that he failed to show in state court unless he can establish cause for and prejudice from such failure"). Accordingly, the undersigned finds that Lewis has failed to exhaust his state remedies.

2. Lewis's Claim Of Lack Of A Fair Trial Is Procedurally Barred.

If a petitioner fails to exhaust state remedies, the district court must generally dismiss the claims without prejudice to allow the petitioner an opportunity to present the claims before a state court. *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). If it is obvious that the unexhausted claim would be procedurally barred in state court, however, the federal court should treat the unexhausted claim as procedurally defaulted. *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003); *see also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (*per curiam*)

("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.").

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a

constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Under Florida law, Lewis is now barred from bringing this claim in a state postconviction proceeding. First, it is untimely under Fla. R. Crim. P. 3.850(b) because his judgment of conviction became final more than two years ago. Fla. R. Crim. P. 3.850(b); *see also, Allen v. Sec'y, Dep't of Corr.*, 767 F. App'x 786, 791 (11th Cir. 2019); *Breland v. State*, 58 So. 3d 326, 327 (Fla. 1st DCA 2011) ("the conviction and the sentence become final … upon issuance of the mandate in the direct review proceedings.").

Additionally, none of the exceptions to Rule 3.850(b) apply to Lewis. First, having attended the trial, he knew the facts on which the claim is predicated well before May 2014 (his 2-year deadline). Indeed, he filed his 3.850 based on his knowledge of what occurred at the trial. Second, his claim is based on Florida burglary law, Florida landlord-tenant law and federal constitutional law regarding ineffectiveness of counsel. None of those represent a "fundamental constitutional right … not established within the period provided for herein and . . . held to apply retroactively." Rule 3.850(b)(2). Third, Lewis drafted his Rule 3.850 motion

himself; therefore, no attorney neglect is involved and 3.850(b)(3) cannot apply to him. Accordingly, the undersigned finds that Lewis's claim of an unfair trial is procedurally barred.

3. The "Cause and Prejudice" and "Fundamental Miscarriage of Justice" Exceptions Do Not Apply.

Lewis has presented nothing to suggest that any "objective factor external to the defense impeded the effort to raise the claim properly" in his first 3.850 motion; thus, he cannot show cause for failing to do so. *See Wright*, 169 F. 3d at 703. He also cannot show that counsel's error "infected the entire trial with error of constitutional dimensions" such that there is "a reasonable probability of a different outcome." *Crawford v. Head*, 311 F.3d at 1327-28. Here, the phone messages, one of which originated from the victim's home, the broken screen, the footprint on and damage to the door, and the sister's testimony provided ample evidence for a jury to conclude that Lewis was not lawfully in the home.

Furthermore, the record shows that the testimony and argument presented at trial by the defense was that the 19th Street house was a "family" home. During opening statement, defense counsel Martin stated that the evidence would show that the 19th Street house was a family home that actually belonged to an older sister and that "Mr. Lewis and Ms. Baker were welcome in her home." ECF Doc. 19-2 at 27. He also argued that if the jury heard evidence that Lewis had consent or a license to enter the 19th Street house, then the jury should weigh that in considering whether

the State had proven that he did not have permission to enter beyond a reasonable doubt. *Id.* at 29.

Lewis testified at trial that he lived in the 19th Street house in 1994 or 1995 with his sister, Marvel, and that after that he "always went around there" even when Baker lived there. ECF Doc. 150-51. He was under the impression that he could go inside the house and had been doing so for years. *Id.* at 151. He also testified that it was not uncommon for him or Baker's son to go in through the window. *Id.* at 151-52.

The testimony from Baker, on the other hand, was that she had not given him permission to be in the house. Baker testified that Lewis, at the time of the events in this case, lived with his mother on SW 18th Terrace, the "next street over" from the 19th Street house. *Id.* at 34. Lewis did not have a key to the 19th Street house and did not pay utilities, taxes or rent. *Id.* She also testified that although he had been an invited guest at the home, he had been welcomed there by her only in that role. *Id.* at 35-36.

After the State rested, the prosecutor moved to exclude expected testimony by defense witnesses that Lewis had permission to enter the house from the Cobbs, as owners of the property. *Id.* at 106-110. The State argued that under Florida law, the legal tenant of a home has the right to determine who can and cannot enter, not the owner once a legal tenancy is established. *Id.* at 107-08. In fact, the State argued, a property owner can be charged with burglary of his own property if his legal tenant

does not consent to his entry.  *Id.* at 107-08.  The Court agreed with that statement

of Florida law.  *Id.* at 108.

Defense counsel explained, however, that this was not exactly the argument

the defense was making.  Instead, defense counsel argued the following:

> we would argue that they [the Cobbs] have the right to authorize
> individuals to live in the home, that Ms. Lewis -- Ms. Baker, rather, was
> part of this arrangement; she was not, in fact, a tenant, and that Mr.
> Lewis believed he had the consent to go in that home.

*Id.* at 109.  After the Court asked defense counsel what evidence he had to support

that point, counsel responded as follows:

> he believed that they had gave [sic] him permission to go in the home,
> that he believed he had permission because of circumstances. The
> testimony of various family members and possibly the testimony of Mr.
> Lewis.

*Id.*  In other words, defense counsel was arguing that Baker was not made a full

tenant by Cobb, the owner.  Instead, counsel argued that, because of the unique

family arrangement involving the house and the lack of a formal lease and rent, the

Cobbs gave Baker rights short of a legal tenant.  She could live there, but everyone

else was welcome as well:

> What we're saying here is that the understanding that Mr. Lewis had
> and the understanding that Ms. Baker had -- at least we want to argue
> to the jury -- the understanding of the whole family is that the family
> members had permission to go in there, and it was never withdrawn.

*Id.* at 114.  The Court then allowed "the testimony so long as it's offered for those

purposes."  And, Cobb offered the expected testimony: that the home was for the

family's use.   Defense counsel also elicited the testimony of a neighbor who personally witnessed Lewis regularly entering the 19th Street house through the window when Baker was not home.  *Id.* at 145-46.  The neighbor testified she never heard Lewis get yelled at for doing so.  *Id.* at 146.

Thus, regardless of whether trial counsel was incorrect in advising Lewis about the consent needed in most cases, the evidence presented at trial supported a coherent defense strategy: Lewis thought he had consent to be in the property, Lewis had been there by himself numerous times before, and the Cobbs treated the property as a family home.  In fact, the court gave the following special jury instruction, which supported trial counsel's position:

> Authority to enter or remain in a structure or conveyance need not be given in express words. It may be implied from the circumstances. It is lawful to enter or remain in a structure or conveyance of another if, under all the circumstances, a reasonable person would believe that he had the permission of the owner or occupant.

ECF Doc. 19-1 at 54.  Thus, counsel presented a coherent theory and supported it with testimony, evidence and a requested jury instruction.  Lewis does not suggest a different, better theory counsel could have offered.  Therefore, the undersigned finds no reasonable probability of a different outcome of not guilty, had counsel utilized a different strategy or defense at trial.

For these reasons, not only can Lewis not show prejudice under the cause and prejudice exception, he cannot show that this is the "extraordinary case where a

constitutional violation has probably resulted in the conviction of someone who is actually innocent." *Schlup*, 513 U.S. at 327.

### B. Lewis Failed to Show a Reasonable Probability He Would Have Accepted the 5-Year Plea.

As stated above, the state court denied Lewis relief on Ground Four because Lewis failed to show he would have accepted the plea.  Since the last state-court decision that provided a relevant rationale for the state's denial of relief as to Ground Four is the August 31, 2015 final order of the state court on remand, the undersigned will "look through" the First DCA's per curiam affirmance to that decision.  ECF Doc. 19-9 at 53; *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (O'Connor, J., concurring).

Prior to issuing its order, the state court held an evidentiary hearing on Ground Four.  At the hearing, Lewis testified as follows regarding the advice he received from his counsel about a consent defense at trial:

> Well, the conversation we had, we were standing up in Court, he took me to the back door.  He asked, Do I know anybody that can say that I could be in the house?  And I said, Yes, my sister.[4]  And then he said okay, we're good with that.  That will pretty much get us through. We can win with that.

*Id.* at 215; *see also, id.* at 238 ("If they allege burglary, then we can win with this. Do I have anybody that can say I can be in this house, what was brought to me.  And

---

[4] From context, the Court concludes that Lewis is referring to Wanda Cobb, the older sister of both Lewis and Baker.

I gave him that.  And I told him, yes, I had somebody that say I can be in that house.").

However, when Lewis was asked whether he declined the plea because of the advice counsel gave him regarding consent, Lewis testified repeatedly that he did not take the plea because he did not know he was being charged with burglary.  In other words, Lewis's testimony at the evidentiary hearing was that if he had known he was facing a burglary charge, he would have accepted the plea:

> Q. Had you known that you could not get permission from the owners of the house to be there, would you have taken the five—year plea?
> A. I would've taken the five-year plea if I would've knew burglary was even in the question.  At the time it was mentioned that they was trying to allege burglary, but if —— anybody in their right mind would not take 15 years over 5 years if they knew burglary was —— so yeah, I would've took the five years.

ECF Doc. 19-9 at 217-18.

> Q.    Yes, sir.  Let me interrupt you sir, so I can focus you a little bit on this.  Basically, what you're saying is, at the time, you made the decision to go forward and take the chance –
>
> A.    Because burglary was not going to be a charge.

ECF Doc. 19-9 at 245.

> A.    I wasn't charged with burglary.  That wasn't said to me. I wasn't charged with burglary.  Anybody in their right mind would know if you was charged with burglary, it was brought to the attention like that, you's not gonna take fifteen years over five when you got a five-year plea there right there.  Okay.  That's what I'm saying.

ECF Doc. 19-9 at 246; *see also, Id.* at 235 ("Anybody in their right mind knows if you're getting charged with burglary, you're not going to turn down no five-year plea deal.").

> A.    I was guided that way because I was told, if I lost trial for criminal mischief, on trespassing and aggravated stalking, I would do five years. Okay. That's the chance I gotta take. Okay. I'm gonna still do the five years. If I don't win, I still do five years.

ECF Doc. 19-9 at 243.

On cross-examination, the State impeached Lewis on his contention that he was unaware he had been charged with burglary. The State presented Lewis with transcripts of several hearings where Lewis was instructed by the judge or his counsel that he was being charged with burglary and faced a minimum mandatory of fifteen (15) years imprisonment on that charge under the PRR. On February 16, 2011, Judge McDonald stated to Lewis during a status conference that "I once again, I have to place on the record that the State is under the belief you qualify under prison releasee reoffender, which means if you are convicted of a qualifying offense, which is what's been alleged of you … aggravated stalking and burglary of a dwelling, both of which are qualifying offenses. If you get convicted of the burglary, they'll be a maximum sentence of 15 years." ECF Doc. 19-9 at 225.

On February 21, 2011, at another court appearance, Lewis's counsel stated to the state court, "Mr. Lewis has been charged initially with the offense of aggravated stalking and criminal mischief and no trespass. The State, from the onset, announced

that it was their belief that Mr. Lewis qualifies as a prison release reoffender. Therefore, as of that information, the qualifying offense would be aggravated stalking, subjecting him to a five-year Department of Correction's sentence.  After negotiations and discussions, the result of those negotiations and discussions, unfortunately Mr. Lacy - - Mr. Lewis rather, was the State amending the information and filing a charge of burglary of an occupied - - burglary of a dwelling, which now subjects Mr. Lewis to a 15-year mandatory-minimum of Corrections sentence." ECF Doc. 19-9 at 228.  On March 2, 2011, Lewis's counsel, Mr. Martin, advised the state court, once again in Lewis's presence, that, "All right.  Understand that if you go to trial on the charges that are present before the Court, you face 15 years as a – on the burglary of a dwelling PRR; and aggravated stalking is also a PRR eligible offense.  So the idea would be that the State will be seeking 15 years on the burglary charge." ECF Doc. 19-9 at 234.  Lewis acknowledged his understanding of Martin's statement. ECF Doc. 19-9 at 234.  Martin continued and reminded Lewis that Martin previously advised him that "if the State was willing to go back to five years, that might be something you should take advantage of."  ECF Doc. 19-9 at 234.  Also, during a hearing on March 16, 2011, Lewis acknowledged he understood "if [he's] convicted as charged here, that [he's] facing 15 years on the burglary charge."  ECF Doc. 19-9 at 235-36.

The State also presented Lewis with a letter written to him by Martin on January 19, 2011, advising Lewis the State had charged him with burglary and he

was looking at a 15-year sentence for that charge.  ECF Doc. 19-9 at 229-231.  Lewis

denied receiving the letter and explained, "If I would've seen that - - if I would've

saw that there, I would've taken five years in prison."  ECF Doc. 19-9 at 231.

Despite being confronted with the recorded testimony and the letter, Lewis

maintained he was unaware he had been charged with burglary:

> Prosecutor: What you're telling this Court today, is all of those in-court
> meetings, where it was discussed with you, that you were charged with
> burglary and it was a 15-year possible sentence, that you could take this
> plea for five years.  You did not hear any of this. You're still alleging
> today that you knew nothing about the burglary?
>
>     ****
>
> Lewis: I wasn't charged with burglary. That wasn't said to me.  I wasn't
> charged with burglary.  Anybody in their right mind would know if you
> was charged with burglary, it was brought to the attention like that,
> you's not gonna take fifteen years over five when you got a five—year
> plea there right there.  Okay. That's what I'm saying.

ECF Doc. 19-9 at 243-46.

Lewis's trial attorneys also testified at the evidentiary hearing.  Attorney

Martin did not remember many of the details of his representation of Lewis but did

have access to his notes from the case.  *Id.* at 251.  He testified he sent Lewis the

January 19, 2011 letter because he wanted to communicate to Lewis the seriousness

of the offense in hopes it would prompt Lewis to provide Martin with the names of

potential witnesses.  *Id.* at 252-55.  Martin also testified he did not recall telling

Lewis he would be acquitted on the charge of burglary if he went to trial.  *Id.* at 256.

Martin agreed, however, on cross-examination, that the defense to burglary at trial

was that Lewis had permission from the owners of the home to be there.  ECF Doc. 19-9 at 259.

Lewis's other trial counsel, Canaan Goldman, testified he did not recall making Lewis any kind of promise that Lewis would be acquitted if he had permission to be in the residence.  *Id.* at 261-62.  In fact, Goldman testified he was sure he had not made promises to Lewis because "I never make promises regarding acquittal.  You can never tell.  There's no guarantee ever."  *Id.* at 262.  Like Martin, Goldman admitted, on cross-examination, he and Martin relied "very heavily" on the defense that Lewis had permission from the owners to be in the 19th Street house.  ECF Doc. 19-9 at 264.

The state court denied the post-judgment motion under *Alcorn v. State,* 121 So. 3d 419, 422 (Fla. 2013), finding that "even if Defendant had been explicitly told that a consent-of-the homeowner defense was not viable, he would still have rejected the State's plea offer and proceeded to trial."  ECF Doc. 19-9 at 61.  The state court based its decision on two findings (1) none of Defendant's testimony was credible and (2) Defendant believed, and still believes, that he had an absolute right to enter the victim's home; and, that he did nothing wrong."  ECF Doc. 19-9 at 61.  Thus, the state court found there was "not a reasonable probability that Defendant would have entered a plea and foregone a trial on the issue of his entry into the victim's home."  ECF Doc. 19-9 at 61.

The undersigned finds that the state court decision was not contrary to clearly established federal law. In *Alcorn*, the Florida Supreme Court, applied the United States Supreme Court's decisions in *Frye* and *Lafler* to determine whether a defendant met the prejudice prong under *Strickland* when counsel was alleged to have been ineffective in plea negotiations. *Alcorn*, 121 So. 3d at 430. Thus, the state court applied the proper law. The undersigned also finds that the state court's decision was not based on an unreasonable determination of the facts. To the contrary, Lewis has not rebutted the state court's factual findings, which are presumed to be correct, by clear and convincing evidence.

First, Lewis testified on numerous instances he would have accepted the plea had he known he was facing a burglary charge and, thus, a potential 15-year sentence. Putting aside the credibility of Lewis's lack of knowledge of the burglary charge, the fact that he would have taken the plea had he known about the burglary charge undermines a finding that counsel's advice regarding consent was the cause of him turning down the plea. In other words, regardless of what counsel told Lewis regarding consent, Lewis would still have turned down the plea because, as he stated, "I was going to do an automatic five years, so that's why I proceeded to trial." Second, Martin advised Lewis to take the 5-year plea. Third, as the state court correctly found, Lewis maintained throughout the proceedings, including at the evidentiary hearing, that he was allowed to be in the home and thus believed he was innocent.

Under *Frye*, it is Lewis's burden to "demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Id.* Lewis, however, failed to offer any credible testimony or evidence tending to show a reasonable probability that he would have accepted a guilty plea had counsel told him consent was needed from the tenant of the home, rather than the owner. Indeed, Lewis's petition and reply focus almost entirely on the *Strickland* performance prong and fail to address the prejudice prong. Whether counsel's performance was deficient, however, is irrelevant without a showing of prejudice. In fact, having determined that the state court's finding that Lewis failed to satisfy the prejudice prong of the *Strickland* test should be upheld, the Court need not address whether counsel's performance was deficient. *See Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000) (citing *Hill v. Lockhart,* 474 U.S. 52, 56 (1985)) ("It is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure with respect to either prong constitutes a failure to demonstrate ineffective assistance of counsel.")

For these reasons, the undersigned finds that Lewis is not entitled to relief under 28 U.S.C. § 2254.

### D.   Evidentiary hearing

The undersigned also finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations,

which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the state court held an evidentiary and made factual determinations that are not to be disturbed absent clear and convincing evidence. The state court also made credibility determinations that are to be accepted by this Court. Thus, another evidentiary hearing is not necessary. *See id.*

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to

this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.      The clerk shall change the docket to reflect that Mark S. Inch has been substituted as the respondent.

And, it is respectfully RECOMMENDED:

1.      That Petitioner's petition under 28 U.S.C. § 2254 be DENIED, without an evidentiary hearing;

2.      That a certificate of appealability be DENIED; and

3.      That the clerk close this matter.

DONE AND ORDERED this 13th day of September, 2019.


*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.